UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

TOM C. DERINGTON,
    Plaintiff,

CASE NO.:

Vs

BELMAR DEVELOPMENT ASSOCIATES, LLC,
A Florida limited liability company,
ENCORE HOUSING OPPORTUNITY FUND II
GENERAL PARTNER, LLC,
a Delaware limited liability company not
authorized to do business in Florida,
TOWER 2, LLC, a Delaware limited liability company,
And ROYAL PALM COMPANIES, LLC, a South
Dakota limited liability company,

    Defendants.
_____/

## VERIFIED COMPLAINT

Plaintiff, TOM C. DERINGTON, brings this action against Defendants, BELMAR DEVELOPMENT ASSOCIATES, LLC, a Florida limited liability company, EHOF II HOLDINGS (A), L.P., a Delaware limited partnership, ENCORE HOUSING OPPORTUNITY FUND II GENERAL PARTNER, LLC, a Delaware limited liability company, not authorized to do business in Florida, TOWER 2, LLC, a Delaware limited liability company, and Royal Palm Companies, LLC, a South Dakota limited liability company, and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.§201 *et seq.*, and Florida Statutes §448.101, *et seq.*, and alleges as follows:

1. Jurisdiction is conferred on the Court by 28 U.S.C.§1331 and 29 U.S.C.§216(b).

2. At all times material hereto, Plaintiff, TOM C. DERINGTON was a resident of Broward County, Florida, (hereinafter referred to as "Plaintiff" or "Tom C. Derington")

and was an employee of Defendants as defined by the FLSA, from on or about February 16, 2015 through July 31, 2016.

3. At all times material hereto, Plaintiff, TOM C. DERINGTON, engaged in interstate commerce on a regular and recurring basis, within the meaning of the FLSA through interstate communications including but not limited to, via telephone and internet communications and in the providing construction estimating and scheduling in the production of goods and/or services in interstate commerce as defined by the FLSA, specifically including the Defendants' construction of Paramount Condominium, at 701 North Fort Lauderdale Beach Boulevard, Fort Lauderdale, Broward County, Florida, and Miami World Center, Miami, Florida, at the direction of the Defendants, either directly or through their authorized supervising agents, Square Edge, Inc. and Petrocchi Construction Corp..

4. At all times material hereto, Defendants, BELMAR DEVELOPMENT ASSOCIATES, LLC, a Florida limited liability company, through its Development Team, including its manager, ENCORE HOUSING OPPORTUNITY FUND II GENERAL PARTNER, LLC, a Delaware limited liability company, not authorized to do business in Florida, its manager during all times material hereto, together with ROYAL PALM COMPANIES, LLC, a South Dakota limited liability company, engaged in interstate commerce in Broward County, Florida, and elsewhere, and/or in the production of goods and/or services in interstate commerce as defined by the FLSA , had more than ten (10) employees, and, had revenue in excess of $500,000 per annum.

5. Defendants, ENCORE HOUSING OPPORTUNITY FUND II GENERAL PARTNER, LLC., and ROYAL PALM COMPANIES, LLC, through their managers and

managers' authorized employees, or, through its authorized agent, Square Edge, Inc., dominated BELMAR DEVELOPMENT ASSOCIATES, LLC, administratively or otherwise acts, or has the power to act, on behalf of the limited liability company, vis-à-vis its employees and had the authority to and did direct and control the work of others, including Plaintiff, Tom C. Derington, thus ENCORE HOUSING OPPORTUNITY FUND II GENERAL PARTNER, LLC., were an "employer" of the Plaintiff, TOM C. DERINGTON within the meaning of 29 U.S.C. §203(d) and Fla. Stat. §448.101(3).

6. Royal Palm Companies, LLC operates a url on the world wide web titled "http://www.RPCHoldings.com" to which Plaintiff was assigned the email address Tom@RPCHoldings.com.

7. TOWER 2, LLC, a Delaware limited liability company, made payments to Plaintiff for first five (5) months of Plaintiff's employment as well as for the period of June 16, 2016 through July 14, 2006.

8. Upon information and belief, Tower 2, LLC, engaged in interstate commerce in Broward County, Florida, and elsewhere, and/or in the production of goods and/or services in interstate commerce as defined by the FLSA, had more than ten (10) employees, and, upon information and belief, had revenue in excess of $500,000 per annum.

9. The Defendants authorized the operation of a url on the world wide web to advertise for purposes of selling units at the Paramount Fort Lauderdale condominium project, which url is known as http://www.paraountresidences.com.

10. In justifiable reliance upon Defendants' representations and promises, Plaintiff, TOM C. DERINGTON, accepted employment and began working directly for Royal Palm Companies, LLC, dba RPCHoldings.com, and for Defendants Encore, as an construction estimator, scheduler and plans examiner, quality control inspections, physically inspecting work, among other duties involving hands on work in the field, and otherwise attempting to expedite the progress of the work. Plaintiff was advised that he would report to and be under the direct supervision and take directions from Petrocchi Construction and Square Edge. Plaintiff found that he was personally being directed to perform anything and everything that the Defendants wanted done such that only about 10% of his time was expended on estimating and scheduling and approximately 90% was performing numerous other tasks as directly assigned and under the daily direction and supervision of the various Defendants developers and their developers' agents, including but not limited to Square Edge, Petrocchi Construction as supervising contractor inspector, and other companies, as assigned and directed by the Defendants.

11. The work Plaintiff performed included reporting deficiencies in construction design and in actual construction.

### Deceptive Business Practices

12. Plaintiff objected to Royal Palm Companies, in or about March, 2015, that Nitin Motwani, one of the managing members of Defendant, ENCORE HOUSING OPPORTUNITY FUND II GENERAL PARTNER, LLC., installed a home theater and sound system, having a value of approximately $21,000 in his homestead, in Coral Gables, Miami-Dade County, Florida, the costs of which were charged to and paid

by the Miami World Center project, and therefore constituted a fraudulent charge against profits due to investors in the Miami World Center project, in violation of Florida Statute §501.01 et seq. and other applicable laws involving fraud and theft. Plaintiff was informed that if he did not approve and sign off for the costs he could be terminated.

### Election Law Violations

13. Plaintiff was directed, over his objection and threat of loss of his job, on several occasions by the Defendants' agent, Square Edge, who issued directions, as a "high priority", to approach various specified prospective subcontractor applicants , numerous actual subcontractors and design professionals[1],. to make donations, in October, 2015, to the campaign of Teresa Sarnoff, running for election to the City of Miami City Commission, District 2, and in March, 2016, to the campaigns of County Mayor Carlos Gimenez and County Commissioner Audrey Edmonson, then running for re- election to the Miami-Dade Mayor and Commission seats. Square Edge provided Plaintiff with a list of names to demand contributions from, some times under the false pretense that the proposed professional or subcontractor would get work on the Paramount Ft. Lauderdale project or Miami World Center project, which the Defendants then did not deliver upon. Upon information and belief, the Defendants were then in the process of developing the Miami World Center in the City of Miami.

---

[1] Including prospectively employed design professionals who made the required donations and received no contract for services in return.

14. Plaintiff was provided written instructions by Defendant's agent, Square Edge, to provide the prospective subcontractors and subcontractors on how to make donations made by both the business entities and, indirectly, in the name of the employees of those prospective subcontractors and subcontractors, in violation of Florida Statute §106.08(5)(a).

15. Plaintiff objected and was informed by Glenn Fidje of Square Edge, that these actions, requiring the donations from prospective subcontractors and subcontractors, and delivery of the instructions on how to circumvent the campaign contribution laws were directly upon instruction from Nitin Motwani, a managing member of the Defendant ENCORE HOUSING OPPORTUNITY FUND II GENERAL PARTNER, LLC., who required them or Plaintiff would lose his job.

16. Plaintiff was clearly threatened that if he wanted to keep his position with the development, he had no choice but to deliver the information to the prospective subcontractors and contractors, in order that the Defendants, developers, could get credit with the candidates for the donations made.

### Construction Law Violations
### Miami World Center

17. Plaintiff was instructed and required to physically perform roof repairs at the Miami World Center sales office in November, 2015, the same day after he had been released from the hospital for cardiac surgery and heart pacemaker implanted.

18. Plaintiff questioned and objected to the work being done without a permit and was told to just shut up and get the work done without any more questions, under clear threat that he would otherwise lose his job.

19. The Plaintiff repeatedly objected and informed the Defendants, who were developing the Miami World Center, that the sales office for the Miami World Center was substantially remodeled in Miami without first obtaining the required building permits, in violation of the Florida Building Code and applicable City of Miami and Miami-Dade County ordinances and the Florida Life Safety Code. Plaintiff questioned and, on several occasions, objected to the lack of permits and lack of life safety measures and equipment, in that, in case of a fire, there was no sprinklers, smoke detectors, no fire alarms, etc. which constituted a danger to the lives of all persons who entered into or worked in the Miami World Center sales center. Plaintiff was told to mind his own business. As a result of Plaintiff's numerous objections, Defendants caused an architect to draft plans, but never filed for a permit and Defendants otherwise ignored Plaintiff's complaints of violation of the Florida Building Code and Life Safety Code, as they did with the many objections and complaints that Plaintiff brought to their attention.

## Paramount Ft. Lauderdale

20. Plaintiff reported orally to Petrocchi and to the Defendant developers and anyone else who would listen, the discovery that the architectural ceiling elevations of the Townhouse units in the Paramount Ft. L. project were less than permissible in accordance with the Florida Building Code, and that Defendant developers would not be able to obtain a valid Certificate of Occupancy for those units. Petrocchi reported Plaintiff's findings in writing and the Plaintiff discussed the problem in writing to the Defendants.

21. Plaintiff reported to the Defendants developers, and others that the water heaters designed and intended to be installed would not fit into the water heater closet because the closets were designed too small to accommodate the water heaters.

22. Plaintiff discovered and reported to Petrocchi, Square Edge, and to the developers, that the structural steel subcontractors were frequently improperly placing the reinforcing steel too close to the edge of the forms for floor/ceiling slabs, and columns, which condition would permit thermite burn, generally known as "burn through" to occur, in violation of the Florida Building Code and would lead to construction defects resulting in circumstances which would constitute fraudulent misrepresentation to buyers, breach of contract, negligence and violation of Florida's Unfair and Deceptive Trade Practices Act.

23. Plaintiff discovered that Revuelta Architecture International P.A. ("Revuelta"), the design architect of record, failed to secure its required contract with the design engineer, even though that responsibility was included within Revuelta's contract. This resulted in the developer over paying Revuelta by well over $339,000. Plaintiff requested a full accounting, which would result in a contractual refund from Revuelta.

24. On more than one occasion, Plaintiff was advised to **not** put his findings and complaints of defective construction practices in writing, particularly about the "burn through" problem which will develop with the column construction and with regard to the Town House ceiling heights.

25. Plaintiff had also brought countless other design deficiencies to the developers' attention, resulting in Luis Revuelta demanding that either Plaintiff[2] be removed from the project, or Revuelta would not complete its project design responsibilities.

### Termination as a Result of Numerous Objections

26. As a result of Plaintiff's numerous objections as aforesaid to the Defendants' unacceptable business practices, including Plaintiff's aforesaid objection to the charging of repairs to the Motwani home to the corporate construction costs, Dev Motwani and Nitin Motwani ultimately caused Plaintiff to be fired.

27. Even though the Plaintiff was fired and removed from the job due to his numerous and repeated objections, as aforesaid, Dan Kodsi, managing member of Royal Palm Companies, LLC, conceded to Plaintiff by email that Plaintiff's findings were correct.

28. During the Plaintiff's employment, Defendants did not pay Plaintiff the full and proper overtime wages of 1.5 times his regular hourly rate for all hours worked over 40 each week. Plaintiff worked at least 70 hours per week, except the one week when Plaintiff was hospitalized.

29. The records, if any, concerning the date range of Plaintiff's employment, the number of hours Plaintiff actually worked, and the compensation actually paid to Plaintiff are in the possession and/or control of Defendants; however, Plaintiff has attached a

---

[2] Revuelta confused Plaintiff for Petrocchi in his June 7, 2016 threat to Dan Kodsi, of RPC Holdings, in response to Plaintiff's repeated objections and complaints about his firm's repeated violation s of the Florida Building Code and accepted building practices, placing the project into jeopardy of poor construction which would show up after it had been sold out to unwitting purchasers, in violation of Florida's Deceptive and Unfair Trade Practices Act and other applicable laws.. In fact Petrocchi had by then already been removed from the Paramount Ft. L. project.

statement of claim as Exhibit A to provide estimates of the damages. These amounts may change as Plaintiff engages in the discovery process.

30. Defendants have knowingly and willfully refused to pay Plaintiff all of his legally entitled wages.

31. Plaintiff has complied with all conditions precedent to bringing this suit, or same have been waived or abandoned.

32. Plaintiff has retained the services of the undersigned attorney and is obligated to pay for the legal services provided.

## COUNT I
## VIOLATION OF FAIR LABOR STANDARDS ACT ("FLSA")

33. Plaintiff realleges and reavers each and every allegation set forth in paragraphs 1 through 30 above, as set forth herein in full.

34. Plaintiff alleges this action pursuant to the Fair Labor Standards Act, 29 USC §§216(b), that Plaintiff is entitled to: (i) time-and-a-half overtime pay and (ii) liquidated damages pursuant to the Fair Labor Standards Act, 29 USC§§201 et seq.

35. Plaintiff seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees pursuant to 29 USC§ 216(b).

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, plus costs, attorneys' fees and such other remedy as the Court deems just and proper.

## COUNT II
## FLORIDA WHISTLEBLOWER'S STATUTE

36. Plaintiff realleges and reavers each and every allegation set forth in paragraphs 1 through 30 above, as set forth herein in full.

37. This Court has jurisdiction pursuant to Florida Whistleblower's Statute, Florida Statute §448.101, et. seq.

38. Defendants, BELMAR DEVELOPMENT ASSOCIATES, LLC, a Florida limited liability company, through its Development Team, including EHOF II HOLDINGS (A), L.P., a Delaware limited partnership, its manager, by ENCORE HOUSING OPPORTUNITY FUND II GENERAL PARTNER, LLC, a Delaware limited liability company, not authorized to do business in Florida, its manager during all times material hereto, together with ROYAL PALM COMPANIES, LLC, a South Dakota limited liability company, engaged in interstate commerce in Broward County, Florida, and elsewhere, and each is an employer as defined in Florida Statute §448.101(3).

39. Plaintiff, a resident of Broward County, Florida, was an employee of the Defendants, as defined in Florida Statute §448.101(2).

40. Plaintiff was employed as a person who was instructed to and who did perform any and every job, including reviewing the plans and the construction, until he was terminated from his position on or about July 12, 2016. Such conduct violates the Whistleblower Act, specifically Fla. Stat. §448.102(3).

41. As a result of Defendants' illegal retaliatory conduct as specifically described in paragraphs 10 through 21, above, the Plaintiff has suffered, and continues to suffer the loss of income and the value of fringe benefits he would have received had his employment not been terminated by the Defendants. In addition, the Plaintiff has suffered and continues to suffer from emotional distress, mental anguish, humiliation, and the loss of the enjoyment of life.

Wherefore, the Plaintiff prays:

a. That the Court take jurisdiction over this action;

b. That the Court order the Defendants to reinstate the Plaintiff to his former position or to an equivalent position or, in the alternative, award the Plaintiff front pay;

c. That the Court award the Plaintiff lost pay and the value of his lost fringe benefits;

d. That the Court award the Plaintiff Compensatory damages; and

e. The the Court award the Plaintiff costs of this action, including a reasonable attorney's fee.

42. Plaintiff demands trial by Jury.

## VERIFICATION

I, Tom C. Derington, verify, under penalty of perjury, that I have read the foregoing Complaint and the allegations of fact are true and correct to the best of my personal knowledge.

_____
Tom C. Derington

LAW OFFICE OF LEE H. SCHILLINGER, P.A.
Attorney for Plaintiffs
5701 Sheridan Street,
Hollywood, Florida 33021
Tele. No: (954) 981-8383 Broward
            (305) 444-8383 Dade
Telefax:  (954) 342-8898

By: _____
LEE H. SCHILLINGER, ESQUIRE
FLA. BAR NO. 149058
fraudbusterlawyer@gmail.com
lawdocs@lawflorida.com

Exhibit A
Statement of Claim
Tom C. Derington

**Unpaid Overtime Wages**

| Period | Weeks | Average Weekly Hours Worked | FLSA Equivalent Regular Hourly Rate[3] | Overtime Half-Time Hourly Rate[3] | Total Unpaid Overtime[3] | Total Liquidated Damages[3] |
|---|---|---|---|---|---|---|
| 2/16/2015- 7/31/2016 | 76 | 70 | 71.25 | 35.63 | $243,686.40 | $243,686.40 |

Total Unpaid Overtime Wages[3]  $243,686.40
Total Liquidated Damages[3]  $243,686.40
Total[3]  $487,372.80

---

[3]Numbers are averages, estimates, and/or approximations. Time and payroll records are in the possession and/or control of Defendants. The amount of damages claimed in this statement of claim, and the amount of damages claimed in this Complaint may change as information is uncovered through the discovery process.